In this case, there is very little dispute about the law or the facts. California Supreme Court has made clear in footnote 3-4 of N. Ray Robbins that when it orders informal briefings and the State of California, the respondent, makes an argument that the habeas petition should be procedurally barred or time barred, that when it later issues an unexplained order denying the habeas petition, it is to signify that that order has considered the State's arguments and rejected them. Let me just interrupt right here because I think this is a difficult case. And I'm very sympathetic with your reading of Robbins, but doesn't Bonner v. Carey control here? It precludes us from reading the California Supreme Court's summary denial as finding that the petition was timely. With all due respect, Your Honor, I'm so sorry that I'm not familiar with holding that case that didn't come up in the briefing. Well, let's throw in two other ones. How about Walker v. Martin and Evans v. Chavez? Okay. We can talk about those. Chavez certainly does not preclude the lease in this case. Chavez is very clear at this case that it's whatever the state court decides. If the state court imposes a time bar, then we have to – Well, let me just read you just a little piece here of what the Supreme Court says. It says that a decision by the California Supreme Court on the merits, in quotes, did not prove that the California Supreme Court thought the petition was timely. That is because the California Supreme Court might have decided to address the merits of the petition even if the petition had been untimely. Absolutely. And when there's no informal briefing, that's exactly what you have to do. So when you have unexplained orders where we don't have any briefings, then – Is there a case that says because it's briefed, it's different? Well, Robbins, I think, says that. You think Robbins stands for that proposition, and it overrides the cases that I mentioned and that Judge Nelson raised? Absolutely. I think that's an extremely important distinction to make, and that's the distinction that Robbins made. Let me give you this. I apologize for citing Bonner to you. Somehow I must have picked it up in another case, but Bonner v. Currie is 425 F. 3rd, 1145. A 2005 case that seems to be controlling here. 425 F. 3rd, 1145, 2003. That's Bonner v. Currie. 425 F. 3rd, 1145, and 1148. And if you wish, we won't need to discuss that now since you haven't read it, and I won't continue with that question. Well, I would like to follow up on Judge Nelson's question, because I think in one of the footnotes in Bonner, the point that concerns me out of Bonner is that we said we're going to look to the last reasoned decision, and if we've got just a flat one sentence denial by the California Supreme Court, that's not the last reasoned decision. We're going to look to the superior court decision. Now, if we're bound by that, you've got a timeliness problem. Well, I guess I think that in light of Robbins, you have a more reasoned decision than you think. If you understand what an unexplained reason means in the context of briefing where timeliness was brought up by the state, specifically timeliness that has to do with the period of time before the superior court habeas is filed, so exactly that period. I think that's a fine answer. I think it's the best answer you can give. And that leads me to this dilemma. Robbins is, I think, a 1998 decision by the California Supreme Court, and if you look at footnote 34, I think it can be read to say what you have said it says. Unfortunately, the U.S. Supreme Court seems to have overlooked footnote 34, except for Justice Stevens' concurring opinion. So under an AEDPA standard, how can we say that the California courts have made a mistake in light of clearly established Supreme Court authority, even if we think that the U.S. Supreme Court has overlooked the effect of footnote 34 in Robbins? It's a funny dilemma. I'm not sure I've ever seen this problem before. Okay. Well, the unreasonable application of Supreme Court law only applies to the merits. I don't think 2254D1 applies in this context at all. So I think the question is, is there an open question of law, given Chavez and all the timeliness Supreme Court precedent? Have they ruled on this issue knowing that footnote 34 has been in effect since the 90s, and only Justice Stevens is aware of it? It looks like the U.S. Supreme Court has mischaracterized California law, but it's given us some very specific instructions based on what I think may be a misreading. Well, I don't think any – it's never been argued before. The only thing that's ever been argued before the U.S. Supreme Court with respect to California timeliness is unexplained orders, and it stops there. And there are millions of unexplained orders without any informal briefing. And so in that context, that's what the Supreme Court is talking about, where you have an unexplained order. Even though those are assumed to be on the merits orders, we still can't assume that a procedural bar hasn't also been imposed, and we have to do this independent analysis. So this case is so distinctly different, and it's never been before the U.S. Supreme Court at this time. That is, when you have informal briefings and the procedural bar, the very time bar at issue, is before the California Supreme Court, it makes it extremely clear that that signifies they considered it and they rejected it. And in the habeas context, where we're so concerned about federalism and we want to validate the state's ruling, it seems here we have a really very clear ruling that the California Supreme Court deemed that period justified. And if they deem that period justified, then the Superior Court habeas is timely, properly filed, and you have tolling. You seem to be arguing that because something is brief, that that makes it reason, but when the court doesn't say anything, it's just what the parties say. Whereas under Bonner, the last reason decision can be the Superior Court, because that's the last one we've got in this case, where the court itself explains the reasons for its decision. Isn't that correct? Well, I can respond two ways to that. Again, repeating that even Bonner is only talking about unexplained orders without informal briefing. It doesn't speak to that, number one. It talks about informal briefing? It talks about the briefing? If it's not Bonner, it's not at all. But that's what I'm saying. That seems to be the basis of your argument, that somehow the briefing makes the difference as opposed to what the court does in terms of reasoning. Only because that's what the California Supreme Court has clearly said. I am just reiterating what the California Supreme Court has said. The California Supreme Court made it very clear that in the context of briefing, if the time bar is brought up and they have then, after that informal briefing, they had an unexplained order, that is to signify consideration and rejection of the time on this bar. And what do we do with the point that Judge Bybee made that Justice Stevens referred to that? So the Supreme Court was obviously aware of what Robbins said, but it chose not to refer to it in the majority opinion. Well, with all due respect, Justice Stevens didn't actually make this particular argument in his concurrence. He references footnote 34 to explain the California Supreme Court order practice, but he actually doesn't talk about it in this context. For our purposes, you want us to assume that the court just simply is not aware of it and has not made any rulings with respect to footnote 34? No petitioner has ever argued it, so it's never been before them, ever. The issue has never been asked. The only issue before the Supreme Court has always been an unexplained order without any briefing. What does that mean? What are we supposed to do with that? But I also want to speak to your second question, or your last question, having to do with the look-back doctrine, which is YILK, if I'm pronouncing that correctly, and I may not be. Even in YILK, the U.S. Supreme Court says that that is just a presumption and that it's a rebuttable presumption. And here I think that the presumption about relying on the last prior decision is rebutted by the California Supreme Court order. So even in YILK, it's not rigid. It is a presumption that can be rebutted, and I absolutely think it's rebutted in this case. I'd also like to discuss – Kelsey, you have 30 seconds left. Would you like to retain some time for rebuttal? I'd love that. Thank you so much. Thank you, Your Honors. Good morning, Your Honors. Richard S. Moskowitz, Deputy Attorney General, on behalf of Respondent Helene. In summary fashion, the petitioner contends that he's entitled to statutory tolling in this case for two reasons. The first is that the first petition, he says, wasn't really untimely because the California Supreme Court denied his later state petition on the merits rather than as untimely. And he also says that the timeliness bar invoked by the Superior Court was not an adequate and independent state grant. Both of these arguments are squarely foreclosed by existing United States Supreme Court authority and this Court's authority. With respect to the first argument, the implied overruling one, that argument fails for three reasons. The first, which I think the Court didn't even allude to in its questioning of my adversary, was he never raised it in a district court. He tries to escape the waiver by relying on a case called U.S. v. Flores-Montano, which held that the Court has discretion to decide issues not raised in the court below if they're purely legal in nature and if the party prevailing below will not be prejudiced. He hasn't met either of those requirements here. The first problem is that the implied overruling theory does not raise purely legal issues. But looking at it even from the most favorable standpoint to him, it would be issues of mixed questions of fact and law. So that alone takes it outside Flores. And also, unlike the prosecution in Flores, petitioner's failure to preserve the issue at the district court level is potentially prejudicial. Because here, he's seeking to raise ineffective assistance of counsel claims that, assuming that the district court at some point gets this case back and finds any potential merits to, presumably we're going to have to hear evidence on those. Evidence is going to have to be presented. Time will have elapsed. Memories may have slipped. And in fact, the people will be in a less advantageous position as opposed to being able to, with respect to being able to meet those claims than they would be if the district court had adopted his position in the first place. So, there clearly has been a waiver. And there is, in fact, authority from this court, White v. Martel, 601 F. 3rd 882, per current opinion of this court, which already held that an argument strikingly similar to the one that he's trying to raise now was waived by the failure to assert it at the district court level. So that's number one. Number two, as a matter of California habeas law, the petition to the California Supreme Court was not an appeal of the Superior Court's denial of its first state habeas petition. It was an independent petition. And in fact, under that same California line of authority, the Superior Court's denial of a habeas petition is final and unappealable. The California Supreme Court, in its ruling on the third state habeas petition, did not say anything about reversing, vacating, or overruling that decision. It didn't even mention the Superior Court's decision. And under the California Supreme Court's decision in Riles, at the most, at the very most, you could say that the court's failure to imply the timeliness bar after the state invoked it might be read as saying that the third state petition was timely. And in particular, it might conceivably be read as saying that if the petitioner had provided adequate justification for his delay in filing the third petition. But that's all it said. It did not speak and could not have spoken to whether the Superior Court correctly denied his first state habeas petition. Because again, that denial was final and unappealable under California law. Let me just ask this question. Sure. Doesn't the Supreme Court in Evans instruct us that in the absence of clarity about whether the state court ruled on timeliness, the federal courts should make that determination under California law, given Robin's instructions that the sort of summary denial of issues here indicates that they found the petition timely, doesn't that at least create ambiguity here such that a remand is necessary? Well, Your Honor, let me answer that question in two parts. The first part of my answer is that the Supreme Court did indeed say that there had to be clarity. But the second part of my answer is that it was absolutely clear from the Superior Court's ruling that the denial of relief was based on timeliness. Allow me to read it to you. Petitioner's petition for habeas corpus is denied for the following reasons. One, petition fails to justify a delay of two and a half years between his conviction and the filing of the petition for habeas corpus. And then it cites the case that preceded Robin's, In re Clark, from 1993. Now, his point is that, in effect, that was reversed or overruled by the California Supreme Court when it ruled on the third state habeas petition. But the premise of that is incorrect. There was no overruling or vacating or reversing of the Superior Court's decision. Number one, because the California Supreme Court couldn't have done that. Again, it had no appellate jurisdiction whatsoever. So it could not have said that the Superior Court was wrong in terms of making that decision. Mr. Moskowitz, what's the authority, again, for the proposition that the Superior Court's determination was final and not appealable? What's that say? Let me find the case. We did discuss that. In re Reed, 33 Cal 3rd, 914, at page 918 and note 2, that was a 1983 decision. People v. Griggs, 67 Cal 2nd, 314, page 317. Both said that habeas jurisdiction, that under California habeas procedure, the Superior Court's denial of a habeas petition is unappealable. In other words, whatever the Supreme Court or the Court of Appeal did, it did not review the decision of the Superior Court. Is that your position? That's our position. Our position is that under California habeas procedure, a petitioner who feels aggrieved by a Superior Court's denial of his habeas petition, his recourse is not to file an appeal. It's simply to file a second original habeas petition with the next higher level court. So did Bonner, our Bonner case, misunderstand California law then? No, I don't think so. I think that it referred to the fact that the, in that particular case, that the only reasoned opinion was the Superior Court decision. You're saying that that's like a separate proceeding altogether in the sense that one is not the appeal of the other, so it may not even be related except for the factual pattern. No, I think that the ill presumption that the court is referring to retains validity here, absolutely. And that if the second state, if a first, a lower level court, in this case the Superior Court, renders a reasoned opinion on a particular issue, and then it goes to the next higher level in a second petition, the presumption retains validity that if there's silence, if there's an unexplained denial at the second level, that that impliedly endorses the reasoning of the lower level court. So you're saying that even though that decision, the Superior Court decision, is non-appealable, and that whatever the Court of Appeals or the California Supreme Court was considering, it was not an appeal of the Superior Court action? I believe that's what the U.S. Supreme Court... Does that mean that Mr. Trigueros could have filed his habeas corpus as an original matter in the Supreme Court without exhausting its remedies in the Superior Court and the Court of Appeals? It doesn't be. They, in fact, in capital cases, that is the established practice, that ordinarily... Or he could have decided to go to the Court of Appeal instead. Perhaps. I mean, he could go to any one of these courts, and there's no exhaustion requirement. There is none. Okay. Now, ordinarily, they don't. In non-capital cases, the ordinary way that it's done is to go to the Superior Court first, and it may very well be to his advantage to do it that way because that gives him potentially three separate fights at the apple rather than just one. As a matter of curiosity, did you cite to the Bonner case in your... We did. ...brief. Yes. Opposing counsel said it wasn't cited in the briefs, and I was apologizing because I don't usually ask questions if it's not cited, but it was in your brief. No, it was in our brief. Thank you. And I believe it was correctly cited by Your Honor in terms of what it stood for. Thank you. You've helped her over your time, and I'm going to give Ms. Espinade some additional time. In light of what you've told us about the independence of the right to file a writ of habeas corpus at any one of the three levels, and it's not being appealed, then what do we do with the Supreme Court's analysis in Carey v. Stafford where the Supreme Court says, you know, that's what it looks like in California, but the fact of the matter is it really functions like an appellate system. And citing California authorities, including Richmond and so on, what do we do with that? I can answer that. The question is both are correct. It does function. It serves the same function as an appeal in the sense that if you feel aggrieved by what the lower-level court has done, you can gain recourse for that potentially. Looking at Carey here, the Supreme Court seems to say that typically the petitioner files a petition in the Superior Court and then will file an original petition on the same issue with the Court of Appeals. That is exactly right. That is a correct statement of California law. So what follows from that is that, yes, if you feel aggrieved by what was done in the Superior Court, your next step is to go and file an original petition in the Court of Appeals, and then if that fails you, then you can try again for the third time in the California Supreme Court. And doesn't that leave us with kind of an awkward situation here where we have, we apparently have at least one court, we have the Superior Court says it's untimely. We're not sure what the California Court of Appeals thinks. Right. But the California Supreme Court, under footnote 34, may think that it is timely. And it's the last filed petition for habeas corpus. So we have at least the last court that reviewed this, reviewing it apparently independently of anything that anybody else ever said about it, under footnote 34, thinks it's timely. Now what do we do? Well, I think first of all, with respect to your first point, I think you can assume that the Court of Appeals, the California Court of Appeals, was in agreement with the Superior Court by virtue of the ill presumption. Why does it even matter if you were able to go to yet another court? You're doing a little forum shopping or something. It certainly follows a logical sequence that I would have thought from having gone to law school. You start with the lower court first. But apparently it's not required. It is not required. And we go to the last court, and the last court, by its own admission in footnote 34, apparently treats it on the merits. Do we now have something we can rely on? I guess, again, and this goes to my third argument, which is that even if she was correct in saying that you could regard that as being akin to an appeal and being a judgment by the California Supreme Court that they're going to reexamine what the Superior Court did, even if in the abstract that was a potentially viable legal theory, it doesn't work in this case because the nature of the problem that was found by the Superior Court to exist with respect to the first petition was a failure to justify the delay. And the fact of the matter is if you look at the existing state court record, you will find that the justification proffered to the California Supreme Court for the delay was not the same as what he said to the California Supreme Court. That doesn't undercut your argument, really. What difference does it make? It's an independent court. It's a freestanding writ of habeas corpus. Well, right. But the problem is that what you're saying, you've got court number one, in this instance the Superior Court, saying this bare bones justification that you provided is not sufficient justification for the delay. Then you've got a higher level court, the California Supreme Court, saying this much more detailed justification that you provided in your third state habeas petition may in fact have been adequate justification for your delay in presenting to this court. But given that in fact the justification provided was substantially, was quite a bit more substantial in the third instance than the first, then saying it was sufficient in the third instance doesn't say anything with respect to whether it was substantial justification. Right. If the Superior Court had had the same justification in front of it that the California Supreme Court had, it might have gone the other way. Sure. That's a basic waiver problem. But it only really works if this is an appellate system. But what we now have by your argument is this is an independent writ of habeas corpus. That's correct. And if it's an independent writ of habeas corpus, Mr. Trigueros can go before the California Supreme Court and change all of his arguments on the merits. He can argue different points he's never raised before. He can argue different points about why it's timely. And it doesn't matter. And if the California Supreme Court says, okay, so we think it's timely, but we deny it on the merits, then why aren't we bound by that? Well, you might conceivably be bound by that in the sense that if there were still time left by the time he came to the California Supreme Court, if there were still time left on the time clock. The time is indeterminate in California. We don't have any way of knowing whether there's time left except by what the California Supreme Court decides. But what I'm saying now is we've also got this federal timing issue. Now you've got the federal statute of limitations, which unlike the state system, is determinative. It says one year, flat out one year, unless there's statutory or equitable tolling. So the question is can the state petition act in terms of statutory tolling? For him to win, all three of the state petitions have to be timely because he needs statutory for all three of them in order to make up for all the time that he lost by the time he came to federal court. So the fact that he might be able to get statutory tolling for his third state habeas petition, the one to the California Supreme Court, makes no difference because the clock had already run. The federal clock had already run by the time he got to the California Supreme Court. Unless you've got some kind of a relate-back doctrine, but since the California Supreme Court is an independent reviewer of habeas corpus petitions in California, then once the California Supreme Court says, well, we think this is timely. We think the third petition is timely. But we haven't said anything about the earlier petition. But since it's an independent court, it has to be timely from whenever he could have first filed a writ of habeas corpus, which means it has to go all the way back to the beginning. No, Your Honor. Because you can't, and there's federal law on this as well, from this circuit. Which case? Let me get it for you. But the doctrine is, here it is. Once the one-year provision has expired, the filing of a subsequent state petition for collateral review will not revive or toll the statute because there's nothing left to toll. But you, frankly, you've raised a whole new point from my perspective, which greatly cuts against you. I mean, the reality is that since these are independent proceedings, and the federal statute clearly refers to the state situation here, and it's indeterminate, you told us that you can have, in effect, three different, certainly two different proceedings, and they are independent of one another. And given the Robbins footnote number 34, if the Supreme Court five years after the beginning proceeds on the presumption that it is timely, doesn't that control federal law here? No, Your Honor. Federal law is dependent upon state law in terms of when it starts. As long as there's a state proceeding moving forward, if it's timely, it's okay, isn't it? No, Your Honor. That's not the law. The Supreme Court, the U.S. Supreme Court, has addressed that issue as well. In what? In the case of Terry v. Saffold, the court talked about specifically what happens if all three of the petitioners' California petitions, Superior Court, Court of Appeal, and Supreme Court, are timely filed. What happens about the gaps in between those? So we have this doctrine called gap control. Okay, so what you're saying is that when you add up the gaps in this case, it's over one year. Well, no, I'm not quite saying that. I'm saying you wouldn't even get to the question of gap control unless you could consider whether each of the three state habeas petitions was timely filed. Let's assume for a moment on the authority of footnote number 34 in Robbins that whenever you have the Superior Court going on a separate petition in the Court of Appeals and a separate petition in the California Supreme Court, let's assume for the moment that all of the federal statute is told during those times. In this particular case, are you saying to us that with respect to a period when those were not pending, that the one-year statute has expired? Yes. You are, okay. I am saying that, but I'm saying something else. I'm saying, and I think what I'm saying is that the assumption, what you asked me to assume in your last question for the sake of discussion, is not a correct assumption. And the explanation for that is as follows. The Supreme Court recognized in Kerry that each of, that whether or not the petitioner was entitled to statutory toll or each of his California state petitions at each of the three levels was dependent on whether each of those was timely filed. Now, I think that where the court is going wrong here, where the court may be having a problem is that you're assuming that just because an earlier filed petition or just because a later filed petition was deemed to be timely, that an earlier filed one must have necessarily also been timely. And what I'm trying to suggest here is that's where the analysis is going off the rails. And the reason why that's incorrect is that you have two different courts looking at two different justifications for why those petitions are timely. And you go back, I assume, to the original Superior Court decision here, which says there was no explanation for the two-and-a-half-year delay. End of story, done, right? And that's by virtue of the U.S. Supreme Court's decision in Pace and Ninth Circuit decisions, including Bonner v. Kerry and White v. Martel, cases saying basically that once any level court, any level state court makes that determination, that's the end of the map as far as statutory tolling for that petition goes. Now, it may very well be that for later petitions, that the petitioner files in the Court of Appeal or in the California Supreme Court and persuades one or both of those courts to accept his justification for the delay. That he might be entitled, conceivably, to statutory tolling for the time that those second and third petitions were pending in those courts. The problem you've got here is by the time this petitioner got to the California Supreme Court, and for that matter, even by the time he got to the Court of Appeal, the federal clock had already run out. For the same reason that the Superior Court said, right? No, because the federal court is an absolutely determinate rule. But you're missing my point. I'm saying the Court of Appeal says you're too late. Yes. I mean, excuse me, the Superior Court says you're too late. You're too late because the justification that you provided was inaccurate. And from your perspective, that's the end of the story. We don't even need to consider the Court of Appeals or the California Supreme Court because by the time the Superior Court, in an independent action, decided this, the federal statute was done. That's correct. And the Superior Court decision that it's final and unreviewable. That's correct. So even if you've gone on to the California Court of Appeals, California Court of Appeals says, well, I'm not sure what the Superior Court was thinking, but this is plainly timely. And the state takes an appeal to the California Supreme Court, and the California Supreme Court says, yeah, that's right, this is as timely as they get. It's too late for us. Well, if the – I'd have to look at that, to be honest with you, because if the state – if it's now the state taking an appeal, I'd honestly have to look at whether the state has the ability to appeal a ruling that's adverse to the state. It doesn't really matter. If Mr. Trigueros is found untimely by the Superior Court, it doesn't matter what any subsequent court says about the timeliness, does it? It doesn't matter. It's final and unreviewable. Even if the California Supreme Court says, I don't know what the Superior Court was thinking, this is about as wrong as it gets. That's correct, yes. And the case that says that is? And the case that says – well, again, it's in two pieces. The case that says it from the state point of view is this In re Genes in the California Supreme Court, which says there is no appeal from a denial of a state habeas petition by a Superior Court. It's not appealing. And then by virtue of federal authorities, which say that you consider each of the state petitions individually as far as whether they are subject to statutory tolling in federal court. And what you have here, again, is a Superior Court saying denied is untimely. Therefore, the clock continues to run while that first state habeas petition to the California Superior Court is pending. But you can't appeal that decision. You cannot appeal that decision. Well, then how can it be – I mean, if it's done, it's over. It's done, it's over. You say while you're appealing. You're not appealing that. That's a whole separate proceeding. No, that's true. So the clock, by the time that case is over, by the time the state Superior Court has denied his first state habeas petition, you look at the federal clock. If statutory tolling was not available for that petition, you look at the clock and the time as it's fired. So once the Superior Court decision is handed down, and let's just say there was a six-month period before Trigueros filed a new habeas petition before the District Court of Appeal, all of that counts toward the clock, right, from your perspective? Because it's a whole separate proceeding. Well, now you're getting into the question of gap tolling, which is a different issue. If it's not part of the same proceeding, how could it be otherwise? But you don't – gap tolling is basically the fourth step in the process. You've got three state habeas petitions. You have to determine individually whether the clock stops during the pendency of each one of those state petitions. Now let's assume that you've determined that the clock has stopped for all three. Then you have the additional question under Terry v. Saffold in the United States Supreme Court. Is he also entitled to tolling during a gap while no state petition is pending? But here you don't – you can't get that far because you haven't gotten over the threshold question of whether the clock has stopped for the first state Superior Court petition. And because that petition was denied as untimely, the clock never stopped. I mean, this is – a lot of this is new information from my perspective. I must confess, I never thought that the Supreme Court consideration of a habeas petition was an original petition that had absolutely nothing to do with the Superior Court. That's news to me, and I'm thinking about that a lot. But your bottom line for us to consider, I gather, is that we don't even need to worry about the Court of Appeals or the Supreme Court because by the time this thing went to the Superior Court, it was over. The federal statute had run. It doesn't matter what he did later on. It's over. It's done. Is that correct? Yes. Okay. Any further questions? If the panel has no further questions, thank you, Mr. Moskowitz. We've certainly kept you over, and we appreciate your argument. Thank you. Ms. Eskenazi? Well, I was a little startled. I never ask a question when it's not flooded in the breeze, and when you said it's not and we're in the breeze, I assumed what you said was true. I wasn't trying to misrepresent. I was just wrong. All right. Thank you. I apologize for my question. I accept your apology. I did not see it, and I was being sincere. All right. Thank you. And I truly apologize for my lack of preparation. I would like to go back to Bonner. Obviously, I missed it. I do have an outline I have of all the Supreme Court cases that have to do with timeliness, and I have a little scrib on Bonner, and I think so if I could address that, I'd like to try to. Before you do that, can I just, because this is really important here. Do you agree with Mr. Moskowitz that the California Superior Court decision is a wholly separate proceeding that is not appealable to any court of appeal? It technically is not appealable. California is a unique state that has original jurisdiction in all three levels. Okay. So if that's true, do you agree that by the time the California Superior Court considered this case, that the federal clock had run? In light of Robbins, absolutely not. Now, why is that? Robbins, that speaks of what the Supreme Court does, and the Supreme Court, in this case, got involved substantially later, but if you have an independent reasoned decision by the Superior Court that said, this is too late. At that point, I think it was like two and a half years or something like that, and the Superior Court says, you know, this is just done. It's over. Doesn't that end the matter as a matter of California law simply because it's a whole separate proceeding at the Supreme Court? Even if you take Robbins 34 at its maximum benefit, it's too late because the federal clock has already run. Isn't that correct, if the underlying understanding of the jurisdiction is correct? It isn't for several reasons. One, just because California has original jurisdiction opposed to appellate review, it doesn't mean that the highest court doesn't have precedential value over the lower court. I agree, but this is a separate proceeding. Maybe the standard of reviews are different, and you have an option. You don't have to go to the Superior Court. You have an option of going to the California Supreme Court first. That's really the basis of original jurisdiction versus appellate review, this idea that the California Supreme Court's ruling doesn't have any binding effect on the legislature. Maybe I should say this in the form of a hypothetical. Let's assume that the first habeas petition filed with the Superior Court was filed a year and a half after the end of any direct appeals. I don't know whether that's the case, but let's assume for a moment that that happened. And we as a federal court look at this and we say, well, okay, here's the end of the direct appeal. Here's the first filing. It's a year and a half late. That's too late. It's over under AEDPA. Is there anything wrong with that analysis? I think I'm misunderstood. I'm sorry. So you file – well, first of all, you have an exhaustion because you never went to the California Supreme Court. So you would fail. You couldn't get into federal court anyway. Okay, but I'm talking about before we even get to it. I'm just saying if you look at it from a federal law perspective, if a year and a half had passed in my hypothetical between the time that Mr. Tregero filed his last definition of the final direct appeal and the time that he filed at the Superior Court. What happens is the two and a half year delay that the Superior Court calculates is from the date of conviction, not from the date of finality. In AEDPA, it's 90 days after finality. Okay, and how long was it between the time that the Tregero's direct appeal finished and he filed at the Superior Court? Can I put it this way? He filed about a month before the AEDPA statute of limitations expired. Okay, so by your calculation, 11 months of the one-year statute had, in fact, run before the Superior Court considered this. That's correct. Okay, so if that's the case, then let's assume that the Superior Court issues its judgment. It's a non-appealable judgment. Do you agree that the time period between that action and his filing with the District Court of Appeal would again start the clock running? You would have gaps holding. Why? It's a separate proceeding. It's not an appeal. Well, I think Chavez and Sackle do. But this is California. But this is California. It is California. In California, you've got original jurisdiction. I mean, this is a big new surprise from my perspective. But if the Superior Court has original jurisdiction and its decision is final, and 11 months had been run, and then it's over, and you have a whole new proceeding, I don't know why the one-year statute wouldn't continue to run between the time that the Superior Court action is completed and your client filed with the District Court of Appeal. You think you get one year each time? No, no, no. No, I'm saying you've got one month left, basically. One month left to do that, under any description under Robbins. Well, Sackle is very clear that you get reasonable gaps holding in between separate appeals. No. Chavez is a California case. Chavez is directly on point. In Chavez, it was a California case. The petitioner filed in the Superior Court, the Court of Appeal, and the California Supreme Court. In all three courts, what happened was there was an unexplained order. There was never any briefing, so Robbins didn't apply. And under Chavez, they gave reasonable gaps holding in between each one of the separate actions. Why would they give that if this was a whole separate proceeding? I understand if it's an appeal because it's all part of the same proceeding. But if you have a whole separate thing, it's kind of like you have an action for wrongful death, and on the other one you have an action for tortious interference or something like that. They're the same factual situations, but they're a whole separate proceeding. Why would there be any tolling during that period? Well, the ADTA doesn't make a distinction between what's appealable and what's original jurisdiction. California does, though. And clearly, EDPA, insofar as the state tolling is concerned, which it relies upon, relies on California law. Now we know that in California, the petition filed with the District Court of Appeal or the California Supreme Court is a separate, independent petition having nothing to do with the Superior Court actions. I appreciate that, but Chavez is a unanimous decision, and it's directly on point. And it speaks to this issue? The facts in Chavez are very clearly set. Does it speak to the issue that the Superior Court action is final and non-appealable? It speaks to gap tolling. It specifically holds that the period in between each court filing is tolled for a reasonable amount of time. And what's more in dispute and maybe a more open question of law is how much time is reasonable. Kennedy and DICTA suggest that 30 to 60 days is presumptively reasonable. But it really boils down to California law as to what's reasonable under Clark and Robbins. But Chavez specifically addresses the difference between other states who tend to have appellate review with respect to collateral attacks and California, which has this unique system that is original jurisdiction. But as Kennedy points out, it still operates very similarly to appellate review. I believe it's Kennedy. But presumably under California's system, you could file simultaneously three petitions for Chavez, couldn't you? I think the procedure you can't use. I think the form asks whether you have anything else pending, and if you have something else pending, I don't. Why would it matter? It sounds like somebody over at the clerk's office is curious, so they put the question on there, but it doesn't seem like it would have any legal effect, would it? Well, again, the form asks because they don't want to have that dual litigation. But I think the policy concerns of California. The policy in California is they like you. Respondents suggest we want three bites at the apple, but really, Chavez petitioners prefer just to go to the California Supreme Court, get exhausted, and get going to the federal court. In fact, the most risky thing we can do is go to the superior court because particularly, like in this case, the issue was already litigated at trial, and they already lost before that judge. So going before that judge was more of a risk than anything else. Would you address the waiver question? Did you raise any of this before the district court? I looked over the magistrate's order while Mr. Moskowitz was talking. I didn't see references to Robbins. I didn't see discussion of footnote 34 of this whole question. So was it raised? Robbins is not raised in the district court. What is consistently raised throughout the state and federal litigation is that the superior court miscalculated the delay, that it was not two-and-a-half years of delay, that it's 11 months delay, that because it was an IAC claim, which rested on facts outside of the record, you had to start from the point at which the conviction was final, which is after direct review, not at the point in which the defendant was convicted by the jury and then later sentenced. Even Martin D. Walker is very clear on this point. Martin D. Walker also. So you actually filed about 14, 15 months after? 11. Well, August through October, I guess that would be 14 months. Let me take a look at my chart. It's 11. It was August of 2004. The California Supreme Court rejected the appeal on direct review. Right, but it becomes final 90 days later because you get the benefit of the time you would have had to file cert with the U.S. Supreme Court. So it actually, under California law, your conviction becomes final 90 days after the specific review. Is that California law that you get the 90 days for seeking certs? I think it's in AEDPA. Is that California law? I just might be confusing it now. I think that AEDPA tells you that you've got the time to file certs, but I don't know what California law is. And most likely, it may just – you know, I'm sorry at this point. There's so many intricacies and habeas that sometimes it's hard to keep up with. You're sorry. We've got to decide the time. But with respect to Waiver, so while Robbins itself was never argued in the district court, we have consistently argued that two-and-a-half-year delay was a miscalculation by the superior court, and that's essentially what we argued before the California Supreme Court, and the California Supreme Court vindicated that argument and said, you're absolutely right. That delay is justified. And we don't know if they meant, yeah, you're right, it was 11 months, not two-and-a-half, or we don't know if two-and-a-half years is enough time to get an expert on the issue. I might note that the expert on the dog sniff evidence, that declaration is signed October 11th, and the superior court habeas petition is filed three days later, three days later. So the idea that they weren't diligent is, in that context, really hard to believe. But I'm still puzzled by the fact that taking your characterization by the Supreme Court of what happened in the superior court, what difference does it make? It's not reviewing the superior court's action. It's an independent, non-reviewed, non-appealable action by the superior court. So what difference does it make what the California Supreme Court says about the superior court's calculation of the two-and-a-half years? Because the California Supreme Court's decisions still have binding effects on lower courts. Even if something's not appealable? Even if something's not appealable. And what if the superior court granted relief, and the state took it up to the California Supreme Court, and they said, no, you're wrong, he could just be out of prison, no problem, regardless of what the California Supreme Court says. Do you understand why this is so confusing? I mean, in a normal appeal, of course, you're absolutely right. But where the superior court's action is characterized as being final and non-reviewable on appeal, that's it. It's over. It's like res judicata. Even the Supreme Court may say something years down the road and say, you know, that case was decided back all those years ago. That was just dead wrong. But it's over. It's done. So I'm having difficulty understanding exactly what it means in this context, that the superior court's action was final. Is it res judicata? Is it over? And if it is, what difference does it make, what the Supreme Court says, in a wholly unrelated separate habeas action? But it isn't just wholly separate. It's just original jurisdiction. What I believe it means in California is that you don't have to file the superior court first. You have the opportunity and the right to go to the California Supreme Court first or the Court of Appeal first. You can do what you want. So what happens in Judge Bidey's comment, if they filed three separate habeas actions at the same time and got three different answers, then what happens? I think what would happen is that the California Supreme Court's decision would trump a court. And if they were truly independent, then as long as one of the three courts thought that your client was deserving of habeas, then there's no review of that decision. So the superior court decides that there's no review of habeas, but your client doesn't get out, in fact, does he? No, because, of course, the highest court controls. The fact that there's no review of habeas means that we don't get rid of stare decisis. We don't get rid of precedent. I'm going to use Mr. Moskowitz's language, that the superior court's decision is final and unreviewable. How does the California Supreme Court get to put somebody back in jail that the California Superior Court, in a final and unreviewable decision, has said it's deserving of habeas? Right. So rather than assume a clear result, I think what it means simply is that, unlike other appeals where you have a time limit that applies as to when you have to file it. It means you don't have to exhaust, is what it means. You don't have to exhaust your remedies by going to the superior court first. Within the state's context. Right. Absolutely right. That's all it means. But with respect to everything else, it really is a system of appeals. That's right. And Chavez says that as much. In other words, so the standard review, there's no, you know, they don't have any, the higher courts don't have to show any deference to the lower courts. There's no time limit in which you have to file the petition, you know, the reviewed, the reviewed, the request for review. It's original jurisdiction. It's just substantial delay. It's what Clark and Robbins tells you. So those traditional. So you hang your head on Chavez. You're saying Chavez. Do you mean Chavez or Chavez? Chavez. Evans versus Chavez, the Supreme Court case. Yes. So that's what you're talking about. Not Chavez. Sure. Okay. All right. Let me just, if what you say is true, well, if the superior court decision is absolutely final, wouldn't it be an absolute defense if you file another habeas and the Supreme Court is over with? Otherwise, it's like an appeal. When you say that the higher court prevails. The higher court prevails because it is akin to an appeal. So technically, it's not an appeal. You have original jurisdiction. But there's no requirement that you go to the lower court before you go to the California Supreme Court, like you would in an appeal. But if the lower court decision is absolute and final, then it's over with, as Justice says. But what you're saying basically, it's not over. That's correct. You can keep going. And you're tolling. How do you get over the one-year federal statute then? If you wait, I mean, it's tolled that whole period. What if you wait five years to go to the California Supreme Court? That would not be reasonable, I guess, under your. Right. And that's exactly what Chavez addresses. Because in Chavez, there's a five-year delay. And they break down. They look, and they understaffle. Staffle should be carried, as the case says, for the presumption of gap tolling. So you get automatic tolling in between your appeals. And then Chavez relies on carry, but says it's unreasonable. Well, they actually say that 30 to 60 days in between is presumptively reasonable. Kennedy says that. And in this case, you have that. Maybe I can go through the timetable of the gap tolling here. It's a question of reasonableness under Chavez, is what you're saying. And it's like an appeal. You can keep going. And you're calling it gap tolling? Interval tolling or gap tolling. That's what Chavez refers to it as. And Chavez is your best case on that. Yeah. The only difference between Chavez and this case is that there is no Robbins analysis, because there was no informal briefing. And so there you just have unexplained orders. And you don't have any contextual ruling by the California Supreme Court that makes it very, very clear that the time period before the Superior Court was, in fact, being justified. So one thing where I think there's a little bit of confusion is this idea that the California Supreme Court's timeliness ruling is specific only to the third petition. But it's not. That's not what Robbins says. Robbins says, look at what the state argued. And whatever the state argued, assume that the California Supreme Court has considered it and rejected it. And here, what the state argued undeniably was that the delay before the Superior Court was unjustified. So because the state created that issue, they thought it was untimely only because of the delay before the Superior Court. They never make an issue of timeliness in the next case. Didn't the California Supreme Court ask for a briefing on that question? It just said informal – no. It asked for a response from the state. That's what it did. It called for a response. Right. So informal response on the merits. And then the state brought up procedural bars, timeliness being one of them. And the timeliness arguments the state made specifically went to the alleged two-and-a-half-year delay before the Superior Court filing. So under Robbins, they're talking about that delay. There's no ambiguity there. They're talking about the delay before the Superior Court filing. So if that delay is justified, which is what Robbins required, then assuming gap tolling, the decision is timely. I have a question for you here. I'm looking at your favorite case, Chavez, here, and it, of course, speaks entirely of appeals. It doesn't talk about separate jurisdiction. But when it ends near the end, it makes this comment. In the absence of one clear direction or explanation from the California Supreme Court about the meaning of the term in quotes reasonable time in the present context or two clear indications that a particular request for appellate review was timely or untimely, the circuit, meaning us, must examine the delay in each case and determine what the state courts would have held in respect to timeliness. That is to say, without using a merits determination as an absolute bellwether as a timeliness, the federal court must decide whether the filing of a request for state court appellate review and state collateral review proceedings was made within what California would consider a reasonable time. So basically, what we have to do here is to look at what's going on in three separate jurisdictions. You conceded 11 months between the end of the direct appeal. And so if we find that if the last direct reasoned decision was the Superior Court, if we find that any delay in filing for the separate habeas proceeding before the District Court of Appeal or the California Supreme Court took any period of time, certainly more than a month, then from our perspective we are at least free under this case to determine that that is not reasonable because it passes the one-year period. Is that right? I think that is right. And if I could speak to the gap polling there. So Chavez doesn't presume 30 days. It presumes 30 to 60 days because it says that's what other states do. And it is just that, a presumption. And what you really have to do is apply California law. What would be a substantial delay under California law? Do you have federal courts applying California law for those gap periods? How much delay are you saying, Superior Court, Court of Appeals, California Supreme Court? What's the total that you've come up with? Right. What is it? I'm going to... Okay. So I think the time to file your original petition is different from the time in between courts. So I think states generally give you one to three years to prepare your petition. Here it was 11 months. And we have a California Supreme Court ruling expressly saying it's timely. Okay. Then for the next two periods of delay, the delay between the Superior Court and the Court of Appeal and the Court of Appeal and the California Supreme Court, you're right. It's untouched. We have unexplained orders. So we do have to... The federal bench has to apply California law and determine whether there's a substantial delay with a presumption that 30 to 60 days is presumptively timely. Okay. So first delay is if we start... Let's start with 11 months having expired by your own concession between the end of the direct criminal appeal and the filing with Superior Court. So is that a fair statement? 11 months have passed. That's correct. But the presumption of 30 to 60 days, I do not believe, applies to the preparation of a habeas. So 30 to 60 days is more like where they make an analogy of a court review. But your 11 months assumes that that period is not counted because Judge Bybee asked you specifically the difference between the September of one year and the October of another year, which would be more than the 11 months. That's right. It would have passed. So let's give you credit for that. Let's take for a moment your assumption that 11 months passed. Right. The Superior Court denies the petition on November 29, 2005. Right. And you don't file your habeas corpus in the Court of Appeals until February 6, 2006. So that's a little... Can we say February 2nd? Because actually, while it's filed on the 6th, it's signed on the 2nd. And under the mailbox rule, it's when it's signed. It's still over 60 days. But it becomes 65. And if you look at California Code of Civil Procedure 1013A, what it says is you get five days of notice if it's mailed within the state of California. So he does not get notice of that ruling until five days later. So that gets you to 60 days. But anyway, look at it. It's more than 30 days, isn't it? It is more than 30 days. It is. So isn't that the end of the story? The 11 months before, over 30 days afterwards equal more than one year. Saffold v. Carey is very clear that you're entitled to gap tolling as long as the time period between our... So California... In other words, if California says you've got 60 days plus a mailing rule for filing this... Right. ...and if it was timely under California's rules and the gap tolling rule says we don't count any of those days... Exactly. Okay. Exactly. That's exactly... So you have... You've added nothing to the 11 months. Let's go up to the Supreme Court then. Court of Appeals to the Supreme Court. So that's 57 days. Fifty-seven. And then 15 days from... And you say that's reasonable. Let's see. Okay. So if you take my analysis about the Code of Civil Procedure, you get from the Superior Court to the Court of Appeals, 60 days, from the Court of Appeals to the California Supreme Court, 57 days, and from the California Supreme Court to the... But those presumption rules, do they apply when it's not an appeal and it's a separate petition? Chavez, this is exactly what Chavez is talking about. But they don't... Chavez talks about an appeal. It doesn't talk about... No. ...separate jurisdictions. If you look on pages 192 through 193, they specifically acknowledge that California has original jurisdiction, but it's very much akin to an appellate system. So it says, in California, state prisoners may seek review of an adverse lower court decision by filing an original petition in the higher court. And that petition is timely. It's filed within a reasonable time. California's system is sufficiently analogous to appellate review systems in other states to treat it similarly. So yes, where other states have appeals, have an appellate system in the collateral review context, the Supreme Court is saying, right, if you get... and that's not going to go against tolling. Into the story, though, what you're saying is you rise and fall on Chavez. Is that right? Well, I rise and fall on Robbins, but Chavez, yeah. With respect to gap tolling, yeah. Okay. And scaffold. You did not complete... We got the 11 months, the 30 to 60 days, the 57 days, and you had one more. Right. So that all gets told under gap tolling. I think the clock does... I would say the clock does start again. Okay. Assuming that the 30, 60, and 50 didn't count. Once the California Supreme Court denies the habeas, then the clock starts again. That's June 13, 2007. That's 15 days. So you had about 30 days to go. You spent 15 of it. So he's under the wire by 15 days. That's correct. Okay. All right. Thank you. We have asked exhaustive questions. Do any members of the panel have any questions? Well, no. No. We appreciate the arguments of both counsel. I think we have exhausted the court's attention this morning. We thank you all for coming over and discussing this very interesting and very complicated case. Thank you. With that, the court will stand adjourned until tomorrow. The court for this session stands adjourned.
judges: Nelson D. W., Bybee, Smith M.